Sabiha Alimuddin KAZI, Individually, and as Representative of the Estate of Alimuddin Sirajuddin Kazi, Deceased, and as Guardian for Mumtaz Alimuddin Kazi and Shehnaz Alimuddin Kazi, Children, Appellants,

v.

DUBAI PETROLEUM COMPANY, Conoco, Inc., Dresser Industries, Inc. d/b/a/ Dresser–Rand Co., Aeroquip Corporation, Solar Turbines Incorporated, and Energy Service International, Ltd. a/k/a Esi, Inc., Appellees.

No. 01–95–01436–CV.

Court of Appeals of Texas, Houston (1st Dist.).

June 26, 1997.

Rehearing Overruled Sept. 30, 1997.

Jeffrey Walker Mankoff, Dallas, for Appellants.

Larry Funderburk, Michael Bell, J. Kyle McClain, JoAnn Storey, Tracy J. Willi, Houston, for Appellees.

Before MIRABAL, COHEN and WILSON, JJ.

## OPINION

MIRABAL, Justice.

This is an appeal of a judgment dismissing a wrongful death action for lack of subject matter jurisdiction. The issue presented is whether the United States and India have "equal treaty rights" as required by TEX. CIV. PRAC. & REM.CODE ANN. § 71.031 (Vernon 1986) for this type of case. We reverse and remand.

According to the original petition filed on August 12, 1993, Alimuddin Sirajuddin Kazi, a citizen of India, was performing his duties on an oil rig off the coast of the United Arab Emirates when an explosion occurred in a compressor room. The explosion caused a blow to Kazi's head that resulted in his death. Kazi's family, who are citizens of India, sought recovery for wrongful death pursuant to TEX. CIV. PRAC. & REM.CODE ANN. § 71.031 (Vernon 1986),[1] which provides:

> (a) An action for damages for the death or personal injury of a citizen of this state, of the United States, or of a foreign country may be enforced in the courts of this state, although the wrongful act, neglect, or default causing the death or injury takes place in a foreign state or country, if:
>
> (1) a law of the foreign state or country or of this state gives a right to maintain an action for damages for the death or injury;
>
> (2) the action is begun in this state within the time provided by the laws of this state for beginning the action; and
>
> (3) in the case of a citizen of a foreign country, the country has equal treaty rights with the United States on behalf of its citizens.

Defendants' "Motion to Dismiss for Lack of Subject Matter Jurisdiction" asserted that Texas courts lack subject matter jurisdiction over wrongful death claims brought by citizens of India because the United States and India do not have equal treaty rights, as required by section 71.031(a)(3).[2] The trial court granted the motion and dismissed the case.

In a single point of error, plaintiffs assert the trial court erred in granting the motion because the United States and India do have "equal treaty rights."

In answering the question presented, we find guidance in the case of *Dow Chem. Co. v. Castro Alfaro*, 786 S.W.2d 674 (Tex.1990). In *Alfaro*, the claims against Texas defendants by Costa Rican citizens for injuries occurring in Costa Rica were properly

---

**1.** The named defendants in the suit are Dubai Petroleum Company, Conoco, Inc., Dresser Industries, Inc. D/B/A Dresser–Rand Co., Aeroquip Corporation, Solar Turbines Incorporated, and Energy Service International, LTD A/K/A ESI, Inc. Defendants Conoco and Dresser are both corporations with principal places of business in Texas. Defendant Dubai Petroleum Company,

Kazi's employer, is a wholly owned subsidiary of Conoco. The other defendants all have significant contacts with Texas.

**2.** Compliance with sections 71.031(a)(1) and (a)(2) is not disputed.

brought in Texas courts because the United States and Costa Rica had equal treaty rights. The equal treaty rights in *Alfaro* were implemented by the "Treaty of Friendship, Commerce, and Navigation" (FCN treaty) between the United States and Costa Rica. Treaty of Friendship, Commerce, and Navigation, July 10, 1851, U.S.-Costa Rica, art. VII, para. 2, 10 Stat. 916, 920 T.S. No. 62. The FCN treaty provision reads:

> The citizens of the high contracting parties shall reciprocally *receive and enjoy full and perfect protection for their persons and property and shall have free and open access to the courts of justice* in the said countries respectively, *for the prosecution and defense of their just rights;* and they shall be at liberty to employ, in all cases, the advocates, the attorneys, or agents of whatever description, whom they may think proper, and they shall enjoy in this respect the *same rights and privileges therein as native citizens.*

*Alfaro,* 786 S.W.2d at 675 n. 2 (emphasis added). According to *Alfaro,* section 71.031(a)(3) requires the existence of treaty provisions *similar* to the FCN treaty before an action by a citizen of a foreign country may be maintained under the section. *Id.*

■ A court should not infer equal treaty rights where they do not explicitly exist. *See Murray v. British Broadcasting Corp.,* 81 F.3d 287, 291 (2nd Cir.1996). However, treaties are to be construed in a broad and liberal spirit, and when two constructions are possible, one restrictive of rights and the other favorable to them, the latter is to be preferred. *Asakura v. City of Seattle,* 265 U.S. 332, 342, 44 S.Ct. 515, 516, 68 L.Ed. 1041 (1924).

■ The issue in this case is whether the relevant provisions in the treaties between the U.S. and India are "similar" to the quoted provision from the FCN treaty. An "FCN treaty" is not required to satisfy section 71.031(a)(3); rather, other treaties may be sufficient if "similar" to the *Alfaro* FCN treaty. *See Owens–Corning Fiberglas Corp. v. Baker,* 838 S.W.2d 838, 841 (Tex.App.— Texarkana, 1992 no writ) (a *number of treaties* between the United States and Canada

grant rights of court access and substantive rights to the citizens of each nation).

Plaintiffs argue that the United States and India have entered into several treaties which, singularly or collectively, provide reciprocal, free, and open access to the courts of justice for the citizens of the other nation. Plaintiffs specifically rely on the "International Covenant of Civil and Political Rights;" the "Vienna Convention on Consular Relations"; the "United Nations Convention on the Recognition and Enforcement of Arbitral Awards;" and the "Tenure and Disposition of Real and Personal Property Treaty."

### International Covenant of Civil and Political Rights

First, plaintiffs argue that the International Covenant of Civil and Political Rights, which was adopted by the United States effective September 8, 1992, is similar to the FCN treaty in *Alfaro* in that it too provides for reciprocal access to the courts of justice in India and the U.S. The covenant reads in pertinent part:.

> *All persons shall be equal before the courts and tribunals.* In the determination of any criminal charge against him, *or of his rights and obligations in a suit at law,* everyone shall be entitled to a fair and public hearing by a competent, independent and impartial tribunal established by law.* ... any judgment rendered in a criminal case *or in a suit at law* shall be made public except where the interest of juveniles otherwise requires or the proceedings concern matrimonial disputes or the guardianship of children.

The International Covenant on Civil and Political Rights, Dec. 16, 1966, Article 14(1), 6 I.L.M. 368 (emphasis added).

### The Other Three Treaties

■ The "Vienna Convention of Consular Relations" of April 24, 1963 defines consular relations and details consular functions of helping citizens in such matters as arranging appropriate representation before tribunals. Vienna Convention on Consular Relations, April 24, 1963, 21 U.S.T. 77.

The "U.N. Convention on the Recognition and Enforcement of Arbitral Awards" is a

treaty between the U.S. and India that facilitates the enforcement of arbitration contracts and arbitration awards by citizens of each country in the courts of each country. U.N. Convention on the Recognition and Enforcement of Arbitral Awards, June 10, 1958, 21 U.S.T. 2517, T.I.A.S. No. 6997, 330 U.N.T.S. 3.

The "Tenure and Disposition of Real and Personal Property Treaty" was extended to India effective June 1902. It grants the citizens of the respective parties the power to dispose of their real and personal property in the territory of the other party. Convention Relating to the Tenure and Disposition of Real and Personal Property, March 2, 1899, T.S. No. 146,.31 Stat.1939.

All three of these treaties address *certain* rights and remedies affecting citizens of India and the United States in their dealings with each other, but they are not broad enough to guarantee access generally to the courts of each country on the basis of equality. Therefore, our main focus must be on the first treaty discussed.

### Revisiting the International Covenant of Civil and Political Rights

■ The question is: Does this treaty provide that the citizens of India enjoy the same rights and privileges in our courts as are enjoyed by U.S. citizens, and vice versa?

The U.S. and India each agreed in the treaty:

— that all persons shall be equal before their courts and tribunals; and

— that in the determination of rights and obligations in a suit at law, everyone shall be entitled to a fair and public hearing by a competent, independent and impartial tribunal established by law.

In our opinion, this treaty does provide for equal access and rights before the courts of India and the U.S. for the citizens of the other country, and therefore the treaty is "similar" to the *Alfaro* FCN treaty for purposes of section 71.031(a)(3). The three other treaties discussed above are consistent with such an interpretation. Further, the affidavit of plaintiffs' expert, Professor Hans Baade of The University of Texas at Austin, which was filed in response to defendants' motion to dismiss for lack of subject matter jurisdiction, supports our conclusion. Professor Baade's affidavit states in part:

India is a party to the International Covenant on Civil and Political Rights (the Covenant) which entered into force for the United States on September 8, 1992.

. . . .

Where the covenant employs terms like "everyone" or "all persons," it refers not only to citizens of the State whose act or omission is at issue, but to *all* persons subject to its jurisdiction, irrespective of their nationality. (The Covenant is denominated "International Covenant on Civil and Political Rights.") It accords *civil* rights to "everyone," to "all persons" or (as the case may be) to "every child," but it grants *political* rights such as voting, election to office, and eligibility for public service in one's own country only to "every citizen," article 25. Subject to such express exceptions only, and in the words of Professor Lillich, "the inescapable conclusion is that aliens are generally covered" by the covenant. R. Lillich, *The Human Rights of Aliens in Contemporary International Law* 45 (1984).

. . . .

Thus, the citizens of India are entitled, by virtue of the Covenant, to be treated as " *equal* before the courts and tribunals" of the United States (emphasis supplied), and also "entitled to a fair hearing by a competent, independent and impartial tribunal established by law." Moreover, this is not only a right of the citizens of India, but also a treaty right of India, which India can invoke, if need be, against the United States. This follows from the principle of the mutuality of treaty obligations.

In response, defendants filed the affidavit of Professor Richard J. Graving of South Texas College of Law. Professor Graving stated in part:

The question presented in the case at bar is whether the Republic of India has "equal treaty rights with the United States on behalf of its citizens" as that formulation is employed in § 71.031(a)(3). Authoritative

commentary on the question ... declares that India does **not** have such treaty rights. Allan R. Stein, *Erie and Court Access,* 100 Yale L.J.1935, 1935–36 n.3 (1991) ("Unlike Costa Rica, India has no treaty with the United States expressly guaranteeing access to courts"); *see also* Note (Joel P. Trachtman), *Jurisdiction of State Courts,* 84 Am. J. Int'l L. 760, 761 n.1 (1990) (quoting plaintiff's counsel in the *Alfaro* case ... to the effect that India does not enjoy "equal treaty rights"). The commentary is clearly correct.

. . . .

In contrast to the specific and comprehensive equal access language of the bilateral U.S.-Costa Rican Treaty of Friendship, Commerce, and Navigation, the language extracted by Plaintiffs from the International Covenant on Civil and Political Rights ... is so brief and at a level of such generality as to be meaningless without legislative implementation. Article 2(2) of the Covenant in fact contemplates that the parties will "adopt such legislation or other measures as may be necessary" to give effect to the various "human rights" provisions set forth therein. No such legislation has been adopted in the U.S. with respect to Article 14(1) ...

Dispositive of the question, however, is the United States' Declaration attached to its ratification of the Covenant. The United States declared:

> The Senate's advice and consent is subject to the following declarations: (1) that the United States declares that the provisions of Article 1 through 27 of the Covenant are not self-executing.

. . . .

This means that the Covenant is not operative as internal U.S. law until applied or implemented by legislative action. Rest. 3rd, Restatement of the Foreign Relations Law of the United States §§ 111(3)(4)(b), 314(2). Such action does not exist.

Plaintiffs filed a response pointing out that the law review articles cited by defendants (which state that India does not enjoy equal treaty rights with the U.S.) all *predate September 1992* when the U.S. entered into the International Covenant on Civil and Political Rights. Plaintiffs further filed a responsive affidavit by Prof. Baade, which states in part:

> Article 14(1) of the Covenant is, Professor Graving opines, "meaningless" and/or merely "aspirational." Yet this article has figured in no less than 22 cases decided by the Human Rights Committee established pursuant to Part IV of the International Covenant on Civil and Political Rights between 1977 and 1985. .... The stature and record of this Human Rights Committee contributed, in good part, to the decision of the U.S. Senate Committee on Foreign Relations to recommend that the Senate give its advice and consent to the ratification of the Covenant ...

> Professor Graving notes, quite correctly, that articles 1–27 in the Covenant are not self-executing, *i.e.,* that they are not transformed into federal law by virtue of the Supremacy Clause of the Constitution of the United States (article VI, § 2). He overlooks that plaintiff herein is not basing her action on a treaty between India and the United States but on a Texas statute: Tex. Civ. Prac. & Remedies Code Sec. 71.031(a). Since she is "a citizen of another country," she can only bring an action for wrongful death or personal injury under that statute if "the (her) country has equal treaty rights with the United States on behalf of its citizens," *id.* § 71.031(a)(3). Thus, this precondition for suit under § 71.031(a) is met if *the Republic of India* has "equal treaty rights" *with the United States on behalf of its citizens.* These country-by-country treaty rights exist by virtue of the Covenant, supra, which is a treaty between (among others) India and the United States. The notion of self-executing treaties is out of place where country-to-country treaty rights are concerned.

> Professor Graving also fails to mention why the United States decided to include, among its Reservations and Understandings accompanying the Covenant, a declaration stating that articles 1–27 thereof are not self-executing. The reason for this declaration is spelled out in the Report of the Senate Committee on Foreign Relations:

The overwhelming majority of the provisions in the Covenant are compatible with existing U.S. domestic law. In those few areas where the two diverge, the Administration has proposed a reservation or other form of condition to clarify the nature of the obligation being undertaken by the United States.

. . . .

As to article 14(1) of the Covenant, in particular, no such qualifying reservation or conditioning statement was deemed necessary ... The right of access to courts in civil matters on the basis of equality, guaranteed by article 14(a), was assumed, rightly, to exist by virtue of general United States law. As regards India, in particular, that right had been confirmed by the Supreme Court of the United States in *Pfizer Inc. v. India,* 434 U.S. 308, 318–320, 98 S.Ct. 584, 590–91, 54 L.Ed.2d 563 (1978), when the Court said:

> This Court has long recognized the rule that a foreign nation is generally entitled to prosecute any civil claim in the courts of the United States upon the same basis as a domestic corporation or individual might do. "To deny him this privilege would manifest a want of comity and friendly feeling." *The Sapphire,* 11 Wall. 164, 167, 20 L.Ed. 127; *Monaco v. Mississippi,* 292 U.S. 313, 323 n. 2, 54 S.Ct. 745, 748 n. 2, 78 L.Ed. 1282; *Banco Nacional de Cuba v. Sabbatino,* 376 U.S. 398, 408–409, 84 S.Ct. 923, 929–30, 11 L.Ed.2d 804; see U.S. Const., Art. II, § 2, cl. 1.

. . . .

Comparing the "International Covenant on Civil and Political Rights" with the FCN treaty involved in *Alfaro,* and weighing carefully the opinions of the esteemed experts and the authorities cited by them, we conclude that the relevant treaty provisions involved here between the U.S. and India are sufficiently "similar" to the FCN treaty to satisfy section 71.031(a)(3). India and the U.S. have "equal treaty rights", and therefore the trial court had subject matter jurisdiction over this case.

Accordingly, we sustain plaintiffs' sole point of error.

We reverse the judgment and remand this case to the trial court.